Daniel J. Kornstein (DK - 3264)
Amy C. Gross (AG - 8836)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
MITSUBISHI INTERNATIONAL          :
CORPORATION,
                                  :

        Plaintiff,                :          **COMPLAINT**

        -against-                 :          ECF Case

CHLORINE PARTNERS, LP,            :          Index No. 08 CV 03180 (DC)(OCF)

        Defendant.                :
--------------------------------X

        Plaintiff, by its attorneys Kornstein Veisz Wexler & Pollard,

LLP, for its complaint alleges:


                        CLAIM
                (Breach of Contract)

Jurisdiction and Venue

        1.   The Court has subject matter jurisdiction over the

lawsuit under 28 U.S.C. § 1332(a)(1) because plaintiff and

defendant are citizens of different states and the amount in

controversy exceeds $75,000 excluding interest and costs.

        2.   Venue in this District is proper under 28 U.S.C. § 1391

and by agreement of the parties.

Parties

3.    Plaintiff Mitsubishi International Corporation ("MIC") is a New York corporation with its principal place of business at 655 Third Avenue, New York, New York 10017.  At all relevant times, plaintiff has been engaged in the business of international trade of products and services across a range of industry sectors.

4.    Defendant Chlorine Partners, LP ("Chlorine Partners") is, on information and belief, a Texas limited liability company with its principal place of business located at 3541 Industrial Way, Longview, Washington 98632.  At all relevant times, defendant has been the 100% owner of Equa-Chlor, LLC ("Equa-Chlor") and Equa-Chlor Marketing, LLC ("ECM") and has engaged in the business of producing chlorine and caustic soda.

Substantive Allegations

5.    On March 26, 2006, MIC and ECM agreed in writing that, from April 1, 2006 through March 31, 2007, ECM would purchase membrane grade liquid caustic soda in bulk from MIC (the "ECM Contract").  A copy of this agreement is annexed hereto as Exhibit A.

6.    MIC and ECM amended their contract on April 17, 2007. This written amendment changed the term of their agreement to January 1, 2007 through December 31, 2007.  A copy of this amendment is annexed hereto as Exhibit B.

7.    Under the terms of the ECM Contract, as amended, ECM

2

agreed to purchase 16,000-32,000 dry metric tons ("DMT") of liquid caustic soda from MIC per year at mutual option.  Exhibit B, ¶ 3.

8.  ECM and MIC agreed that price of liquid caustic soda under the amended ECM Contract would be set by a mutually agreed-upon calculation.  Exhibit B, ¶ 5.

9.  By a writing dated April 12, 2006, Chlorine Partners unconditionally guaranteed to MIC payment of any present or future indebtedness for goods or merchandise sold or advanced to ECM.  A copy of this unconditional written guarantee, along with an accompanying Certificate of Resolution Authorizing Guarantee of Payment, is annexed hereto as Exhibit C.

10.  On July 2, 2007, ECM assigned the ECM Contract to Equa-Chlor.  A copy of this Assignment is annexed hereto as Exhibit D.

11.  Also on July 2, 2007, Chlorine Partners unconditionally guaranteed to MIC in writing payment of any present or future indebtedness for goods or merchandise sold or advanced to Equa-Chlor.  A copy of this unconditional written guarantee, along with an accompanying Confirmation of Guaranty and Certificate of Resolution Authorizing Guarantee of Payment, is annexed hereto as Exhibit E.

12.  On October 17, 2007, Equa-Chlor and MIC agreed upon a shipment of approximately 3,000 DMT of liquid caustic coda to Equa-Chlor at a price of $385 per DMT.  A copy of an email from Nick Yamada, Department Manager, Chlor-Alkali Department of MIC to Steve

3

Johnson of Equa-Chlor reflecting this agreement, is annexed hereto as Exhibit F.

13. On or about November 18, 2007, MIC delivered 2,999.154 DMT of liquid caustic soda to Equa-Chlor under the amended ECM Contract, at a total cost of $1,154,674.29. A copy of the invoice for this shipment is annexed hereto as Exhibit G.

14. On December 18, 2007, the day payment for the November 18, 2007 delivery was due, Mr. Johnson emailed Mr. Yamada, asking for an extension of time to pay the invoice. A copy of this email, along with later email correspondence between MIC and Equa-Chlor, is annexed hereto as Exhibit H.

15. On December 21, 2007, Mr. Yamada confirmed via email to Mr. Johnson that Equa-Chlor could pay the invoice in four equal installments, plus a finance charge of 3% on each payment, due on January 7, February 4, March 3, and April 7, 2008.

16. On January 7, 2008, Equa-Chlor made the first payment of $297,328.20 -- that is, one quarter of the invoice amount ($288,668.57), plus the 3% finance charge ($8,659.63).

17. The January 7, 2008 payment was the only payment made on the invoice to date.

18. At present, $866,005.72 from the invoice remains outstanding, plus $25,980.17 in finance charges. Neither Equa-Chlor nor ECM has made any further payments on the invoice.

19.  On February 27, 2008, MIC's counsel sent a demand letter to Chlorine Partners, demanding payment of the sums owed to MIC by Equa-Chlor and ECM pursuant to Chlorine Partners' guarantees by March 5, 2008. A copy of this letter is annexed hereto as Exhibit I.

20.  Chlorine Partners has not paid the amounts owed to MIC pursuant to its guarantees.

21.  As a result of defendant's breach of contract, plaintiff has sustained compensatory damages of $891,985.89 plus interest.

WHEREFORE, plaintiff demands judgment against defendant awarding plaintiff the sum of $891,985.89 in compensatory damages plus interest, and such other relief as may be just and proper, together with the costs and disbursements of this action.

Dated:    New York, New York
          March 31, 2008


                         KORNSTEIN VEISZ WEXLER & POLLARD, LLP

                         By:  Daniel J. Kornstein (DK - 3264)
                              Amy C. Gross (AG - 8836)

                         757 Third Avenue
                         New York, New York 10017
                         (212) 418-8600

                         Attorneys for Plaintiff


5

# Exhibit A

<u>Liquid Caustic Soda Sales and Purchase Contract</u>

This Contract is made as of 26th day of March 2006 between Mitsubishi International Corporation and EQUA-CHLOR Marketing, LLC with the following terms and conditions of business.

(1) <u>Seller :</u>           Mitsubishi International Corporation
                            1 Houston Center, Suite 3500
                            Houston, TX 77010-2009

(2) <u>Buyer :</u>           EQUA-CHLOR Marketing, LLC
                            7185 SW Sandburg St., Suite 100
                            Tigard, OR 97223-8090

(3) <u>Product :</u>         Membrane Grade Liquid Caustic Soda in bulk

(4) <u>Period :</u>          One year starting from April 1, 2006 ending on March 31, 2007 and to be automatically extended on a year by year ( April - March ) basis unless terminated by either Seller or Buyer in writing 90 days prior to the ending date of the current contract term.

(5) <u>Annual Quantity :</u> 10,000-14,000 DMT / Contract Year at mutual option

(6) <u>Shipment :</u>       Based on 2,500 -3,500 DMT in each calendar quarter. The shipment month in each quarter to be mutually discussed and agreed.

(7) <u>Product Specifications :</u>

| | ( Specifications ) | ( Typical Analysis ) |
|---|---|---|
| NaOH | 48.50 % Minimum | |
| $Na_2CO_3$: | 0.15% Maximum | |
| NaCl: | 0.01% Maximum | |
| $Na_2SO_4$: | 250 ppm Maximum | Less than 20 ppm |
| Fe: | 10 ppm Maximum | Less than 3 ppm |
| $NaClO_3$: | 200 ppm Maximum | Less than 10 ppm |

(8)  Quantity and Quality Determinations :

> Quantity and Quality shall be final at loading tank(s) at loading port by an independent and authorized surveyor whose cost shall be born by Seller.

(9 )  Delivery :  CFR Longview, WA ( Weyerhaeuser Berth ) or Richmond, CA ( Kinder Morgan Berth ) to be mutually agreed on a shipment by shipment basis.

(10)  Price :  Competitive import market price into the U.S. West Coast to be mutually discussed and agreed on a shipment by shipment basis. In case of no final agreement, both parties shall be released from the obligation of the tonnage in the said quarter.

(11)  Payment :  Cash advanced payment to be wired to Seller just prior to the commencement date of each shipment and/or in case Seller's Credit Dept approves credit for Buyer, Seller shall agree to change the payment term of usual 30 days credit term.

(12)  Marine Insurance :  Marine insurance shall be covered by Buyer.

(13)  Maritime Conditions :

> · Vessel :  To be nominated by Seller on an every shipment basis. 5 % more or less allowance in each shipment shall belongs to the nominated vessel.

> · Loading Port :  Seller's safe port(s)/berth(s) in Japan and/or Korea and/or Taiwan and/or China to be nominated by Seller on an every shipment basis.

> · Discharging Port :
> One safe Buyer's berth ( Weyerhaeuser berth ) at Longview, WA or( Kinder Morgan berth ) at Richmond, CA.

- Laytime for Discharging : SHINC 150 LMT/Hour

· Demurrage : As per Charter Party

- C/P form : Asbatankvoy

(14)  <u>Confidentiality :</u>  This contract shall be strictly private and confidential to
any other third parties.


SELLER                           BUYER


Nobuhiko ( Nick ) Yamada          Timothy E. Bistolas
Department Manager                President
Chlor-Alkali Department

# Exhibit B

<u>AMENDMENT to Liquid Caustic Soda Sales and Purchase Contract</u>
<u>Between Mitsubishi International Corporation and EQUA-CHLOR Marketing, LLC</u>

This amendment to Liquid Caustic Soda Sales and Purchase Contract ( "Amendment" ) is made as of the 17th day of April, 2007 by and between Mitsubishi International Corporation, One Houston Center Suite 3500, Houston, TX 77010 ( "Seller" ) and EQUA-CHLOR Marketing, LLC, 3541 Industrial Way, Longview, WA 98632 ( "Buyer" ).

<u>WITNESSETH :</u>

WHEREAS, Seller and Buyer entered into a certain written Liquid Caustic Soda Sales and Purchase Contract dated as of the 26th day of March, 2006 ( "Contract" ), whereby Seller agreed to sell and Buyer agreed to buy Liquid Caustic Soda ;

WHEREAS, retroactively effective as of January 1, 2007, the parties now desire to amend the Contract, but only on the terms and conditions contained herein.

NOW THEREFORE, for and in consideration of the agreements contained herein and in the Contract and intending to be legally bound hereby, Seller and Buyer agree as follows.

1. Clause 2 of the Contract captioned "<u>Buyer</u>" is hereby deleted in its entirely and the following is inserted in lieu thereof.

    EQUA-CHLOR Marketing, LLC
    3541 Industrial Way
    Longview, WA 98632

2. Clause 4 of the Contract captioned "<u>Period</u>" is hereby deleted in its entirely and the following is inserted in lieu thereof.

    One year starting from January 1, 2007 ending on December 31, 2007 and to be automatically extended on a year by year ( January – December ) basis unless terminated by either Seller or Buyer in writing 90 days prior to the ending date of the current contract term.

3. Clause 5 of the Contract captioned "Annual Quantity" is hereby deleted in its entirely and the following is inserted in lieu thereof.

   16,000-32,000 DMT / Contract Year at mutual option

4. Clause 6 of the Contract captioned "Shipment" is hereby deleted in its entirely and the following is inserted in lieu thereof.

   Based on 2,000-4,000 DMT times two shipments in each calendar quarter. The shipment month(s) in each quarter shall be mutually discussed and agreed.

5. Clause 10 of the Contract captioned "Price" is hereby deleted in its entirely and the following is inserted in lieu thereof.

   10.1. Portion-A 50 % [ 8,000 – 16,000 DMT/Year or 2,000-4,000 DMT/Quarter ]

   Competitive import market price into the U.S. West Coast to be mutually discussed and agreed on a shipment by shipment basis. In case of no agreement, both parties shall be released from the obligation of the tonnage in the said quarter.

   10.2 Portion-B 50 % [ 8,000 – 16,000 DMT/Year or 2,000-4,000 DMT/Quarter ]

   Based on mutually agreeable price formula such as "The mid point of FAR EAST Caustic Soda Export Spot ( U.S.$ per dmt fob ) reported on the first covering page of the monthly 'Chlor-Alkali' report published by Harriman Chemsult Limited in the same month of loading minus the mutually agreeable discount rate ( "Formula Discount" ) plus the mutually agreeable yearly freight rate ( "Formula Freight" )".

   In case of the contract year of 2007, Seller and Buyer agreed to skip this Portion-B for the Q1, 2007 and agreed to make the mutual best efforts to perform one shipment in the rest of each quarter based on 7.5 % as Formula Discount and U.S.$ 93/DMT as Formula Freight. However, in case of no shipment of this portion in any particular quarters, such quantity shall be just deducted from the mutual obligation and neither party shall be penalized.

The formula conditions shall be reviewed and agreed on a yearly basis and in case of no agreement for the formula conditions, both parties shall maintain the business in the same manner of Portion-A.

6. Clause 11 of the Contract captioned "<u>Payment</u>" is hereby deleted in its entirely and the following is inserted in lieu thereof.

By Wire Transfer 30 days after each shipment date subject to Seller's Credit Department approval. In case of no approval, Buyer shall arrange cash advanced payment to be wired to Seller prior to the commencement date of each loading laycan. Notification of approved credit limit and required payment terms shall be included in each vessel nomination.

7. In all other respects, the Contract is hereby ratified and confirmed.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be signed by their duly authorized officers respectively.

EQUA-CHLOR Marketing, LLC

MITSUBISHI INTERNATIONAL CORPORATION

BY : _____
( Authorized Signature )

BY _____
( Authorized Signature )

Matt Bradshaw_____
( Typed Signature )

Nobuhiko Yamada_____
( Typed Signature )

CEO_
( Title of Signer )

Chlor-Alkali Department Manager
( Title of Signer )

# Exhibit C

GUARANTEE OF PAYMENT

April 12, 2006

Mitsubishi International Corporation
655 Third Avenue
New York, New York 10017

Gentlemen:

The undersigned, **Chlorine Partners, LP,** having its principal place of business at 3541 Industrial Way, Longview, WA 98632, has 100% ownership in both EQUA-CHLOR, LLC and **EQUA-CHLOR Marketing, LLC,** 3541 Industrial Way, Longview, WA 98632 (hereafter called EC and ECM).

In consideration of your now and hereafter extending credit as you may see fit to said **ECM,** the undersigned does hereby unconditionally guarantee to you, your successors and assigns, the payment, when due, of any and all accounts and indebtedness now due or to become due for or on account of goods and merchandise sold or advanced or hereafter to be sold or advanced by you or your successors and assigns to said **ECM** or its order to the same extent as ECM is obligated therefore.

The undersigned also unconditionally guarantees the payment to you of the amount of any and all damages which may result from your non-delivery of goods and merchandise resulting from the default of **ECM,** but only to the same extent as ECM is obligated therefore. The undersigned consents to any extensions or extension of the time or times of renewal at any time of such indebtedness, or any part thereof, or to any evidence thereof taken at any time by you.

This is to be a continuing guarantee, and the extension of the time of payment or the acceptance of any sum or sums of account, or the acceptance of notes, drafts or any security from **ECM** shall in no way weaken or impair the validity of this guarantee. The principal contract may be modified or dealt with in no any way without notice to the undersigned and without in any way impairing or affecting the liability and obligation under this guarantee for any remaining unpaid in cash to our company or its successors and assigns.

(2)

Should any purchase from you heretofore or hereafter made by ECM be not paid at maturity, you shall have the right to proceed against the undersigned at any time, without any notice whatsoever and without any proceeding or action against ECM and the undersigned hereby waives any demand whatsoever for payment, notice of acceptance of this guarantee or of sales or advances made or contracts accepted thereunder.

This guarantee shall continue at all times and shall remain in full force and effect unless the undersigned notifies you of its termination by registered or certified mail, return receipt requested, and in the event of such termination, this guarantee shall continue to apply to all obligations of ECM created or arising prior to your receipt of such notice of termination.

The intrinsic validity and construction of this Guarantee shall be governed by the local law of the State of New York. The Guarantor irrevocably submits to the jurisdiction of the Federal and State courts in New York for the purpose of any suit, action or proceeding involving this Guarantee and consents to the service of all process, writs and papers by registered mail, return receipt requested, addressed to the Guarantor at its address set forth herein. The Guarantor waives and agrees not to assert any objection to venue in any such court, and any objections to inconvenient forum.

```
CHLORINE PARTNERS, LP,
By:  CHLORINE PARTNERS GP, L.L.C.,
a Texas limited liability company
By: RD Chlorine Partners, LP,
its sole Manager
By: RD Chlorine Partners Texas, LLC,
its General Partner

By: _____
Matthew T. Bradshaw
Managing Member
```

CERTIFICATE OF RESOLUTION
AUTHORIZING GUARANTEE OF PAYMENT


I, Matthew T. Bradshaw, Secretary of **Chlorine Partners, LP** (this "Company"), a limited liability company duly organized and existing under the laws of the State of **Texas**, hereby certify that set forth below is a true and correct copy of a resolution duly adopted at a meeting duly called and held or by unanimous written consent of the Members or Manager(s) of said organization on the 7th day of April, 2006, at which a quorum was present and voting throughout, and that said resolution has not been rescinded, amended or modified, and remains in full force and effect on the date of this Certificate:

> RESOLVED, that any officer or member of this Company be and hereby is authorized and directed on behalf of this Company to execute a Guarantee of Payment substantially in the form attached hereto in favor of Mitsubishi International Corporation covering, generally, the obligations of **Chlorine Partners, LP** as described therein, and to execute any amendments or supplements of such an agreement which may be or are necessary, convenient or expedient to carry out the provision, intent and purposes of such an agreement and, in general, to execute any and all other matter of things necessary, convenient or expedient to maintain the said agreement.

WITNESS my hand and seal of said organization this 12th day of April, 2006.


```
CHLORINE PARTNERS, LP,
By:  CHLORINE PARTNERS GP, L.L.C.,
a Texas limited liability company
By: RD Chlorine Partners, LP,
its sole Manager
By: RD Chlorine Partners Texas, LLC,
its General Partner

By: _____
Matthew T. Bradshaw
Managing Member - Secretary
```

# Exhibit D

## ASSIGNMENT OF LIQUID CAUSTIC SODA SALES
## AND PURCHASE CONTRACT

This Assignment ("Assignment") is executed and delivered by EQUA-CHLOR MARKETING, LLC ("Assignor") to EQUA-CHLOR, LLC ("Assignee").

Assignor, for valuable considerations, the receipt and sufficiency of which are hereby acknowledged, by these presents CONVEYS, ASSIGNS, TRANSFERS and DELIVERS unto Assignee all of the interest of Assignor in and to the following Contract, as amended:

**LIQUID CAUSTIC SODA SALES AND PURCHASE CONTRACT, dated March 26, 2006, and amended April 17, 2007, by and between Mitsubishi International Corporation ("Seller") and Equa-Chlor Marketing, LLC ("Buyer").**

Assignee hereby assumes all covenants and obligations heretofore given or made in respect of the said Contract.

IN WITNESS WHEREOF, the parties hereto have caused this Assignment to be duly executed on this, the 2nd day of July, 2007. This Assignment shall be effective immediately.

ASSIGNOR:

EQUA-CHLOR MARKETING, LLC

By:_____
Matthew T. Bradshaw, CEO

ASSIGNEE:

EQUA-CHLOR, LLC

By:_____
Matthew T. Bradshaw, CEO

# Exhibit E

GUARANTEE OF PAYMENT

July 2, 2007

Mitsubishi International Corp.
655 Third Avenue
New York, New York 10017

Gentlemen:

The undersigned, **Chlorine Partners, LP,** having its principal place of business at **3541 Industrial Way, Longview, WA 98632** has 100% ownership in both EQUA-CHLOR, LLC and EQUA-CHLOR Marketing, LLC, 3541 Industrial Way, Longview, WA 98632 (hereafter called EC and ECM).

In consideration of your now and hereafter extending credit as you may see fit to said EC, the undersigned does hereby unconditionally guarantee to you, your successors and assigns, the payment, when due, of any and all accounts and indebtedness now due or to become due for or on account of goods and merchandise sold or advanced or hereafter to be sold or advanced by you or your successors and assigns to said EC or its order to the same extent as EC is obligated therefore.

The undersigned also unconditionally guarantees the payment to you of the amount of any and all damages which may result from your non-delivery of goods and merchandise resulting from the default of EC, but only to the same extent as EC is obligated therefore. The undersigned consents to any extensions or extension of the time or times of renewal at any time of such indebtedness, or any part thereof, or to any evidence thereof taken at any time by you.

This is to be a continuing guarantee, and the extension of the time of payment or the acceptance of any sum or sums of account, or the acceptance of notes, drafts or any security from EC shall in no way weaken or impair the validity of this guarantee. The principal contract may be modified or dealt with in any way without notice to the undersigned and without in any way impairing or affecting the liability and obligation under this guarantee for any remaining unpaid in cash to our company or its successors and assigns.

(2)

Should any purchase from you heretofore or hereafter made by EC be not paid at maturity, you shall have the right to proceed against the undersigned at any time, without any notice whatsoever and without any proceeding or action against EC and the undersigned hereby waives any demand whatsoever for payment, notice of acceptance of this guarantee or of sales or advances made or contracts accepted thereunder.

This guarantee shall continue at all times and shall remain in full force and effect unless the undersigned notifies you of its termination by registered or certified mail, return receipt requested, and in the event of such termination, this guarantee shall continue to apply to all obligations of EC created or arising prior to your receipt of such notice of termination.

The intrinsic validity and construction of this Guarantee shall be governed by the local law of the State of New York. The Guarantor irrevocably submits to the jurisdiction of the Federal and State courts in New York for the purpose of any suit, action or proceeding involving this Guarantee and consents to the service of all process, writs and papers by registered mail, return receipt requested, addressed to the Guarantor at its address set forth herein. The Guarantor waives and agrees not to assert any objection to venue in any such court, and any objections to inconvenient forum.

**CHLORINE PARTNERS, LP**
By: CHLORINE PARTNERS GP, L.L.C.,
    A Texas limited liability company
By: RD Chlorine Partners, LP,
    its sole Manager
By: RD Chlorine Partners Texas, LLC,
    its General Partner

By: _____
    Matthew T. Bradshaw
    Managing Member - Secretary

## Confirmation of Guaranty

WHEREAS, Chlorine Partners, L.P. has made certain guarantees of performance on behalf of Equa-Chlor Marketing, LLC ("ECM") to Mitsubishi International Corporation ("Mitsubishi"), in connection with the purchase by ECM of import Liquid Caustic Soda from Mitsubishi; and

WHEREAS, ECM has, as of even date herewith, made an assignment to Equa-Chlor, LLC ("EC") of that certain Liquid Caustic Soda Sales and Purchase Contract, dated March 26, 2006, and amended April 17, 2007, by and between Mitsubishi International Corporation ("Seller") and Equa-Chlor Marketing, LLC ("Buyer").

NOW THEREFORE, Chlorine Partners, L.P. hereby confirms its agreement to maintain its guarantee on behalf of EC on identical terms to those in place on behalf of ECM.

IN WITNESS WHEREOF, the Confirmation of Guaranty is effective, the 2nd day of July, 2007.

CHLORINE PARTNERS, L.P.,

By: CHLORINE PARTNERS GP, L.L.C.,
  its general partner

By: RD Chlorine Partners, LP,
  its sole Manager

By: RD Chlorine Partners Texas, LLC,
  its General Partner

By: _____
  Matthew T. Bradshaw
  Managing Member

CERTIFICATE OF RESOLUTION
AUTHORIZING GUARANTEE OF PAYMENT

I, Matthew T. Bradshaw, Secretary of **Chlorine Partners, LP** (this "Company"), a limited partnership duly organized and existing under the laws of the State of **Texas**, hereby certify that set forth below is a true and correct copy of a resolution duly adopted at a meeting duly called and held or by unanimous written consent of the General Partner of the Company of said organization on the 2nd day of July, 2007, at which a quorum was present and voting throughout, and that said resolution has not been rescinded, amended or modified, and remains in full force and effect on the date of this Certificate:

RESOLVED, that any officer or member of this Company be and hereby is authorized and directed on behalf of this Company to execute a Guarantee of Payment substantially in the form attached hereto in favor of Mitsubishi International Corp. covering, generally, the obligations of **Chlorine Partners, LP** as described therein, and to execute any amendments or supplements of such an agreement which may be or are necessary, convenient or expedient to carry out the provision, intent and purposes of such an agreement and, in general, to execute any and all other matter of things necessary, convenient or expedient to maintain the said agreement.

WITNESS my hand and seal of said organization this 2nd day of July, 2007.

**CHLORINE PARTNERS, LP**
By:     CHLORINE PARTNERS GP, L.L.C.,
        A Texas limited liability company
By:     RD Chlorine Partners, LP,
        its sole Manager
By:     RD Chlorine Partners Texas, LLC,
        its General Partner

By:     _____
        Matthew T. Bradshaw
        Managing Member – Secretary

# Exhibit F

```
|---------+------------------------------------------------------------------
------>
|         |
|
|         |                    NOBUHIKO YAMADA
|
|         |
|
|         |                    10/18/2007 10:41
|
|         |
|
|         |
|
|         |
|
|---------+------------------------------------------------------------------
------>
  >------------------------------------------------------------------------
----------|
  |
|
  |
|
  >------------------------------------------------------------------------
----------|


|------------------->
|              To: |
|------------------->
  >------------------------------------------------------------------------
------------------------------------------------------------------+--------|
  |"Steve Johnson" <sjohnson@equa-chlor.com>
|         |
  |
|         |
  >------------------------------------------------------------------------
------------------------------------------------------------------+--------|
|------------------->
|              cc: |
|------------------->
  >------------------------------------------------------------------------
------------------------------------------------------------------+--------|
  |koji.osuka@mitsubishicorp.com
|         |
  |kathy.centeno@mitsubishicorp.com
|         |
  |"Timothy Root" <troot@equa-chlor.com>
|         |
  |
|         |
  >------------------------------------------------------------------------
------------------------------------------------------------------+--------|
|------------------->
|                  |
|------------------->
```

```
  >----------------------------------------------------------------------
----------------------------------------------------------------+--------|
  |
|        |
  >----------------------------------------------------------------------
----------------------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
  >----------------------------------------------------------------------
----------------------------------------------------------------+--------|
  |
|        |
  >----------------------------------------------------------------------
----------------------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
  >----------------------------------------------------------------------
----------------------------------------------------------------+--------|
  |
|        |
  >----------------------------------------------------------------------
----------------------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
  >----------------------------------------------------------------------
----------------------------------------------------------------+--------|
  |
|        |
  >----------------------------------------------------------------------
----------------------------------------------------------------+--------|
|------------------->
|                   |
|        Subject:  |
|------------------->
  >----------------------------------------------------------------------
----------------------------------------------------------------+--------|
  |Caustic Soda/Q4 Additional/December, 2007 Arrival/Recap
|        |
  >----------------------------------------------------------------------
----------------------------------------------------------------+--------|
```

Steve,

Further to our conversation over the phone yesterday, we are pleased to
send you the following recap of the business.

- Seller : Mitsubishi International Corporation
- Buyer : EQUA-CHLOR, LLC.
- Quantity : 3,000 DMT with 5 % more or less at vessel's option
- Delivery : CFR Longview, WA ( Weyerhaeuser Terminal )
- Price : U.S.$ 385/DMT

- Vessel : ''Kaede'' or owners' substitute
- Loading Port(s) : Huangdao, China
- ETA USWC : December 1-10, 2007
- Other terms and conditions shall be in accordance with
   ''Liquid Caustic Soda Sales and Purchase Contract''
   celebrated by EQUA-CHLOR and Mitsubishi on March 26, 2006
   and its Amendment dated April 17, 2007.

As per our conversation yesterday, we will separately be glad to work out
another 2,000 dmt based on mid December arrival. However, we have a credit
control issue under the situation where we will have the following 2
vessels for you in additional to this 3,000 dmt by Kaede. The due date of
''Kamogawa'' is October 31 and the expected due date of ''Kinugwa'' will be
November 30 or so. Do you think you can pay ''Kinugawa'' portion by
November 15 ? If so, I can more freely work out another 2,000 dmt based on
mid December arrival. Please let me know.

QUOTE

M/T Kamogawa V.050E
4,000mt ex Ulsan  to Longview
---
Ulsan       sailed 01 Oct/0300LT
Longview    18-19 Oct


___

M/T Kinugawa V.084E

4,000mt ex Kashima to Longview
---

Kashima        31 Oct-02 Nov
Longview       20-21 Nov
----

Regards,   Nick

--------------------------------------------
Nick Yamada
Dept. Manager, Chlor-Alkali Dept., Mitsubishi Int'l Corp.
President, MI Chlor-Alkali, Inc.
Phone 713-652-9298/Cell 713-882-8886
E-Mail : nobuhiko.yamada@mitsubishicorp.com
         nick.yamada@michloralkali.com
--------------------------------------------

# Exhibit G

 Mitsubishi International Corporation

## INVOICE

1 HOUSTON CENTER, Suite 3500
HOUSTON TX 77010
(Tel) 713-652-9127
(Fax) 713-652-7632

| Invoice No. | Invoice Date | Due Date | Amount | |
|---|---|---|---|---|
| 97099251 | 11/26/2007 | 12/18/2007 | USD | 1,154,674.29 |

**Customer Name**
EQUA-CHLOR, LLC
3541 INDUSTRIAL WAY
LONGVIEW WA 98632

**Please Remit To:**
**Mitsubishi International Corporation**
**Bank of America NT&SA**
**Chicago, IL**
**Acct # 7188901070 / ABA # 026009593**

**Account No.** US1AB00122

*Please detach at perforation and return with your payment and/or*
*note the Invoice Number on your check or wire transfer*



## INVOICE

| Sold To : | Payer : | Ship To : |
|---|---|---|
| EQUA-CHLOR, LLC | EQUA-CHLOR, LLC | EQUA-CHLOR, LLC |
| 3541 INDUSTRIAL WAY | 3541 INDUSTRIAL WAY | 3541 INDUSTRIAL WAY |
| LONGVIEW WA 98632 | LONGVIEW WA 98632 | LONGVIEW WA 98632 |
| Account No. US1A001287 | Account No. US1A001287 | Account No. US1AS00368 |

| Invoice No. | Invoice Date | Your Reference Number | Our Reference Number |
|---|---|---|---|
| 97099251 | 11/26/2007 | CLF-1301-00 | 92850 -11/26/2007 |

| Date of Delivery | Vessel Name / Shipped By |
|---|---|
| 11/18/2007 | "KAEDE" |

| Terms of Payment | Terms of Delivery |
|---|---|
| Wire Transfer<br>30 days after B/L date | CFR LONGVIEW, WA. USA |

| Description | | Quantity | Unit | Unit Price | per | Amount |
|---|---|---|---|---|---|---|
| 000010 4000021946 | Liquid Caustic Soda  (6,049.121 LMT) | 2,999.154 | MTN | 385.00 | MTN | 1,154,674.29 |
| | Total Qty. | 2,999.154 | MTN | Total Amount | | 1,154,674.29 |

**Customer Note:**
MIC REF # CLF-1301-00/KAEDE/11/18/2007

"I CERTIFY THAT ALL CHEMICAL SUBSTANCES IN THIS SHIPMENT COMPLY WITH ALL
APPLICABLE RULES OR ORDERS UNDER TSCA AND THAT I AM NOT OFFERING A CHEM
ICAL SUBSTANCE FOR ENTRY IN VIOLATION OF T.S.C.A. OR ANY APPLICABLE RULE
OR ORDER UNDER T.S.C.A."

 Mitsubishi International Corporation

1 HOUSTON CENTER, Suite 3500
HOUSTON TX 77010
(Tel) 713-652-9127
(Fax) 713-652-7632

Houston Branch
Chlor-Alkali & PVC Division
Business Unit Manager

No deductions will be accepted without our prior authorization.
Claims on merchandise must be made within 10 days after the
delivery date and will be accepted only after our approval and if
they are returned in the original container. Interest at the current
interest rate will be charged on unpaid item after due date.

**All amounts in USD**

r

Code Name "TOKBL-1995"

# TOKYO MARINE CO., LTD.

## TANKER BILL OF LADING

| B/L No. |
| --- |
| TMCJKAE183HUDLVA |

**Shipper**  ZIBO DONGYUELVYUAN CO., LTD.
TANGSHAN TOWN, HUANTAI COUNTY, ZIBO CITY, SHANDONG PROVINCE, CHINA

**Consignee**  Mr. JAY JOHNSTON. EQUA-CHLOR 3451 INDUSTRIAL WAY, P.O.BOX 865, LONGVIEW, WA 98632

# FIRST ORIGINAL

**Notify Party (Without liability of the Carrier-see Clause 19)**
Mr. JAY JOHNSTON. EQUA-CHLOR 3451 INDUSTRIAL WAY, P.O.BOX 865, LONGVIEW, WA 98632

| Ocean Vessel KAEDE | Port of Loading | HUANGDAO, CHINA |
| --- | --- | --- |
| Voy. No.  183E | Port of Discharge | LONGVIEW WA, USA |

| For Transhipment to (if on-carriage) | Final Destination (for the Merchant's reference only) |
| --- | --- |

| Charter Party (if any) : (Dated) 27-Dec-06 | (Form) ASBATANKVOY | (Place) TOKYO |
| --- | --- | --- |
| between (Owners) TOKYO MARINE CO., LTD. | and (Charterers) | MITSUBISHI CORPORATION |

**Freight & Charges**  "FREIGHT PAYABLE AS PER CHARTER PARTY"

**Description of Goods & Quantity (Contents unknown to the Master, the Vessel and the Carrier)**
6,049.121 LMT/ 2,999.154 DMT/ 3,369.976 SDT CAUSTIC SODA LIQUID IN BULK  "SHIPPED ON BOARD"
STOWAGE: 2PS, 7PS

## SHIPPER'S LOAD, WEIGHT AND COUNT

The Goods were loaded by the shipper by pumping into the Vessel and are said by the shipper to be of the above description. The kind, contents, quality, nature, value, specification, actual condition, and any other particulars of the Goods are unknown to the Carrier. Unless the words "based on ship's measurement" are stamped above, the weight, quantity, measurement and gauge figures set forth above are those stated by the shipper and are unknown to the Carrier and as the Carrier has no reasonable and accurate means of checking such figures of the Goods shipped, any reference to those in this Bill of Lading shall be deemed to be for the convenience of the shipper only and shall in no way constitute evidence against the Carrier.

By accepting this Bill of Lading, the Merchant agrees that whether or not the Carrier has delivered at destination all of the Goods which it received under this Bill of Lading shall be determined solely by comparison of the ullages of the Vessel's tanks following loading with such ullages prior to discharge, and that any difference which does not exceed 0.5% (one half of one percent) between the ullage or other measurements on receipt and those on delivery is attributable to clingage or evaporation or inaccuracy of measurement or similar causes, does not represent actual shortage, and shall be deducted from any claim for short delivery.

If figures are entered in the following spaces, the shipment under this Bill of Lading said by the shipper to be _____ M/T was loaded aboard the Vessel as part of one original lot said by the shipper to be _____ M/T stowed into tank numbers _____ with no segregation as to parcels, and the Carrier undertakes to deliver under this Bill of Lading that proportion of the cargo actually received by it in that original lot which is represented by the percentage which the tonnage stated above for this Bill of Lading bears to the total tonnage stated above for the entire original lot. Neither the Vessel nor the Carrier assumes any responsibility for the consequences of such commingling, nor the separation thereof at the time of delivery.

Unless a declared value is inserted here _____ and additional freight is paid accordingly, liability for any loss or damage is limited to the Japanese yen (or other currency at the Carrier's option) equivalent of 666.67 Units of Account(as below explained) per freight unit lost or damaged or 2 Units of Account per kilogramme of gross weight of the Goods lost or damaged, whichever is the higher (or $500 per freight unit lost or damaged if the U.S. Carriage of Goods by Sea Act or any other Hague Rules legislation is applicable) (see Clause 8(2)).

The shipment is carried under and pursuant to the terms of the Charter Party specified above, and all the terms whatsoever of the said Charter Party except the rate and payment of freight specified therein apply to and govern the right of the parties concerned in this shipment. If there should be any conflict between the terms, clauses conditions and exceptions set out herein and those of the said Charter Party, the latter shall prevail except for Clauses 1,2,3,4,5,6,&7 in this Bill of Lading which shall prevail over all the terms, clauses conditions and exceptions of the Charter Party.

Shipped on board the Vessel, the above mentioned goods in apparent good order and condition, unless otherwise indicated herein, for carriage to the port of discharge and/or such other port or place permitted hereby or so near thereunto as the Vessel may safely get, lie and leave always afloat at all stages and conditions of water and weather, to be delivered at the Vessel's side, at which time and place the Carrier's responsibility shall cease, in the like order and condition as the aforesaid port or place unto the Merchant or their assigns, they paying freight as indicated above plus demurrage and other charges incurred in accordance with the provisions contained in this Bill of Lading and in the Charter Party specified above.

In accepting this Bill of Lading the Merchant expressly accepts and agrees to all its stipulation on the front and back hereof, whether written, printed, stamped or otherwise incorporated as fully as if they were all signed by the Merchant, and these stipulation shall govern all the relations between the Carrier and the Merchant.

One original Bill of Lading must be surrendered duly endorsed in exchange for the Goods or delivery order.

IN WITNESS WHEREOF the Master of the said Vessel has signed the number of original Bills of Lading stated below, all of this tenor and date, one of which being accomplished, the others to stand void.

| Number of Original B(s)/L | THREE (3)  COPY (NON-NEGOTIABLE FIVE) |
| --- | --- |
| Place of B(s)/L Issue | TOKYO, JAPAN AS AT HUANGDAO, CHINA CAPT. GIM HEUI-UNG |
| Dated | 18th November, 2007 |

For the MASTER
TOKYO MARINE CO., LTD., AS AGENTS ONLY

# Exhibit H

```
++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
+++++++++++++++++++++++++++++++++++++
|---------+---------------------------------------------------------->
|         |                                                          |
|         |                 NOBUHIKO YAMADA                          |
|         |                                                          |
|         |                 12/21/2007 15:11                         |
|         |                                                          |
|         |                                                          |
|         |                                                          |
|---------+---------------------------------------------------------->
  >-------------------------------------------------------------------
----------------------------|
  |
|
  |
|
  >-------------------------------------------------------------------
----------------------------|


|------------------->
|                To: |
|------------------->
  >-------------------------------------------------------------------
---------------------------------------------------------------+--------|
  |"Steve Johnson" <sjohnson@equa-chlor.com>
|         |
  |
|         |
  >-------------------------------------------------------------------
---------------------------------------------------------------+---------|
|------------------->
|                cc: |
|------------------->
  >-------------------------------------------------------------------
---------------------------------------------------------------+--------|
  |"Clayton Pace" <cpace@equa-chlor.com>
|         |
  |TARO INAMORI/JP/MITSUBISHI CORP
|         |
  |kathy.centeno@mitsubishicorp.com
|         |
  |koji.osuka@mitsubishicorp.com
|         |
  |
|         |
  >-------------------------------------------------------------------
---------------------------------------------------------------+--------|
|------------------->
|                    |
|------------------->
  >-------------------------------------------------------------------
---------------------------------------------------------------+--------|
  |
|         |
```

```
   >----------------------------------------------------------------------
-----------------------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
   >----------------------------------------------------------------------
-----------------------------------------------------------------+--------|
   |
|   >       |
   >----------------------------------------------------------------------
-----------------------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
   >----------------------------------------------------------------------
-----------------------------------------------------------------+--------|
   |
|   >       |
   >----------------------------------------------------------------------
-----------------------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
   >----------------------------------------------------------------------
-----------------------------------------------------------------+--------|
   |
|   >       |
   >----------------------------------------------------------------------
-----------------------------------------------------------------+--------|
|------------------->
|                   |
|------------------->
   >----------------------------------------------------------------------
-----------------------------------------------------------------+--------|
   |
|   >       |
   >----------------------------------------------------------------------
-----------------------------------------------------------------+--------|
|------------------->
|                   |
|        Subject:   |
|------------------->
   >----------------------------------------------------------------------
-----------------------------------------------------------------+--------|
   |RE: payment schedule for Kaede(Document link: NOBUHIKO YAMADA)
|        |
   >----------------------------------------------------------------------
-----------------------------------------------------------------+--------|
```

Dear Steve,

With reference to our conversation over the phone, I am pleased to advise
you that we were able to get the internal approval to your proposal as
attached, We will appreciate your timely payment of $ 297,328.20- each on

January 7, February 4, March 3 and April 7 in 2008 in due course.

Happy Holidays to you and your family !

Regards,   Nick

-------------------------------------------
Nick Yamada
Dept. Manager, Chlor-Alkali Dept., Mitsubishi Int'l Corp.
President, MI Chlor-Alkali, Inc.
Phone 713-652-9298/Cell 713-882-8886
E-Mail : nobuhiko.yamada@mitsubishicorp.com
         nick.yamada@michloralkali.com
-------------------------------------------


|---------+------------------------------------------------------------
------>
|         |
|
|         |              "Steve Johnson" <sjohnson@equa-chlor.com>
|
|         |
|
|         |              12/19/2007 12:30
|
|         |
|
|         |
|
|         |
|
|---------+------------------------------------------------------------
------>
  >------------------------------------------------------------------
----------|
  |
|
  |
|
  >------------------------------------------------------------------
----------|


|------------------->
|               To: |
|------------------->
  >------------------------------------------------------------------
------------------------------------------------------------+--------|
  |<nobuhiko.yamada@mitsubishicorp.com>
|         |
  |
|         |
  >------------------------------------------------------------------
------------------------------------------------------------+--------|
|------------------->
|               cc: |

```
|------------------->
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
  |"Clayton Pace" <cpace@equa-chlor.com>
|         |
  |         |
|         |
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
|------------------->
|                  |
|------------------->
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
  |
|         |
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
|------------------->
|                  |
|------------------->
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
  |
|         |
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
|------------------->
|                  |
|------------------->
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
  |
|         |
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
|------------------->
|                  |
|------------------->
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
  |
|         |
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
|------------------->
|                  |
|         Subject:  |
|------------------->
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
  |RE: payment schedule for Kaede
|         |
  >------------------------------------------------------------------------
-------------------------------------------------------------+--------|
```

Nick,

I received your voice mail regarding clarification on the payment
structure, I apologize that my earlier e-mail was not clear.  Our proposal
is to wire transfer four equal payments of $297,328.20 on the dates
indicated below.  If you have additional questions please let us know.

Best regards,

Steve Johnson

EQUA-CHLOR

3541 Industrial Way

Longview, WA 98632

Direct: 360-577-7858

Fax: 360-636-4302

PLEASE NOTE MY NEW CELL #:             360-442-1766

_____

From: Steve Johnson
Sent: Tuesday, December 18, 2007 5:35 PM
To: nobuhiko.yamada@mitsubishicorp.com
Cc: Clayton Pace
Subject: payment schedule for Kaede

Nick,

As we discussed earlier today due to an internal error in our cash flow
forecasting we did not appropriately account for payment for both a salt
vessel and a caustic vessel in the month of December.  As a result we were
not able to make the payment due today for the delivery of the Kaede; your
invoice number 97899251 for $1,154,674.29.

We are proposing a payment plan that would consist of 4 equal payments
beginning in January 2008 as follows:

25% of total invoice plus 3% finance charge paid by wire transfer on 1/7/08

25% of total invoice plus 3% finance charge paid by wire transfer on 2/4/08

25% of total invoice plus 3% finance charge paid by wire transfer on 3/3/08

25% of total invoice plus 3% finance charge paid by wire transfer on 4/7/08

Further in consideration we would agree to modify the terms of our existing purchase agreement to state that all vessels purchased from Mitsubishi in 2008 would be settled on a prepaid basis.  I understand you will need some time to discuss this internally.  Please let me know your comments once you have had a chance to review our proposal.

Best regards,

Steve Johnson

EQUA-CHLOR

3541 Industrial Way

Longview, WA 98632

Direct: 360-577-7858

Fax: 360-636-4302

PLEASE NOTE MY NEW CELL #:        360-442-1766

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
+++++++++++++++++++++++++++++

# Exhibit I

KORNSTEIN VEISZ WEXLER & POLLARD, LLP

ATTORNEYS AT LAW

757 THIRD AVENUE
NEW YORK, NEW YORK 10017-2013
TELEPHONE (212) 418-8600
TELECOPIER (212) 826-3640
WWW.KVWP.NET

Daniel J. Kornstein
WRITER'S DIRECT DIAL NO.: (212) 418-8610
WRITER'S E-MAIL ADDRESS: dkornstein@kvwmail.com

February 27, 2008

Matthew T. Bradshaw, Secretary
Chlorine Partners, L.P.
3541 Industrial Way
Longview, WA  98632

          Re:  Mitsubishi International Corporation

Dear Mr. Bradshaw:

     On behalf of our client Mitsubishi International
Corporation, we hereby demand immediate payment of $866,005.72
due pursuant to written guarantees of Chlorine Partners, L.P.,
dated April 12, 2006 and July 2, 2007.  This demand arises from
the failure of Equa-Chlor Marketing LLC and Equa-Chlor LLC to
make payments due to Mitsubishi International Corporation.

     If we or our client do not receive payment in full by March
5, 2008, we shall immediately commence and vigorously prosecute
litigation on these guarantees.

                         Very truly yours,

                         Daniel J. Kornstein

DJK:cr

cc:  James Collet, Managing Partners (by e-mail)
     Chlorine Partners L.P.

32S00003LETDJK .00001 .wpd