Daniel J. Kornstein (DK - 3264)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MITSUBISHI INTERNATIONAL            :
CORPORATION,                           08 CV 03180(DC)(DF)
                                    :
         Plaintiff,                    PLAINTIFF'S LOCAL CIVIL
                                    :  RULE 56.1(a) STATEMENT
         -against-
                                    :  ECF Case
CHLORINE PARTNERS, LP,
                                    :
         Defendant.
------------------------------------X

     Plaintiff Mitsubishi International Corporation ("MIC"), by and through its undersigned counsel, submits, pursuant to Local Civil Rule 56.1(a), the following statement of material facts as to which there is no genuine issue to be tried:

### The Parties

     1. MIC engages in the business of international trade of products -- including liquid caustic soda -- and services across a range of industry sectors. Yamada Aff. at ¶ 3;[1] Ex. 1, ¶ 3.

     2. Defendant Chlorine Partners, LP ("Chlorine Partners") produced chlorine and caustic soda during the relevant time period. Ex. 2, ¶ 4.

---

[1] "Yamada Aff." refers to the Affidavit of Nobuhiko Yamada, sworn to on July 16, 2008 and submitted herewith. Cites to "Ex." are to the exhibits annexed to the Yamada Aff.

3. MIC is a New York corporation with its principal place of business at 655 Third Avenue, New York, New York 10017. Ex. 1, ¶ 3.

4. Chlorine Partners is a Texas limited liability company with its principal place of business in Washington State. Ex. 2, ¶ 4.

5. Chlorine Partners is the 100% owner of Equa-Chlor, LLC ("Equa-Chlor") and Equa-Chlor Marketing, LLC ("ECM"). Id.

### The Contract and Amendment

6. On March 26, 2006, MIC and ECM signed a contract in which ECM agreed to purchase membrane grade liquid caustic soda in bulk from MIC during the period April 1, 2006 through March 31, 2007 (the "ECM Contract"). Yamada Aff. at ¶ 4; Ex. 1, ¶ 5 and Ex. A. The contract provided for automatic renewal unless terminated by either party in writing 90 days prior to the end date of the current contract term. Id.

7. On April 17, 2007, MIC and ECM signed a written amendment to the ECM contract, changing the term to January 1, 2007 through December 31, 2007. Yamada Aff. at ¶ 5; Ex. 1, ¶ 6 and Ex. B.

8. Under the terms of the ECM Contract, as amended, ECM agreed to purchase 16,000-32,000 dry metric tons ("DMT") of liquid caustic soda from MIC per contract year at mutual option. Yamada Aff. at ¶ 6; Ex. 1, ¶ 7 and Exs. A and B.

9. Under the terms of the ECM Contract, as amended, ECM and MIC agreed that the price of liquid caustic soda would be set by a mutually agreed-upon calculation. Id. and Ex. 1, ¶ 8.

10. On July 2, 2007, ECM assigned the ECM Contract to Equa-Chlor. Yamada Aff. at ¶ 7; Ex. 1, ¶ 10 and Ex. D. Chlorine Partners admits that ECM assigned the ECM Contract to Equa-Chlor. Ex. 2, ¶ 10.

### The Guarantees

11. On April 12, 2006, Chlorine Partners signed a written Guarantee of Payment in which Chlorine Partners unconditionally guaranteed to MIC payment of any present or future indebtedness for goods and merchandise sold or advanced by MIC to ECM. Yamada Aff. at ¶ 8; Ex. 1, ¶ 9 and Ex. C. The guarantee stated that it would be subject to New York State law. Id. On the same day, Chlorine Partners issued a Certificate of Resolution Authorizing Guarantee of Payment. Id.

12. On July 2, 2007, Chlorine Partners signed a written Guarantee of Payment in which Chlorine Partners unconditionally guaranteed to MIC payment of any present or future indebtedness for goods and merchandise sold or advanced by MIC to Equa-Chlor. Yamada Aff. at ¶ 9; Ex. 1, ¶ 11 and Ex. E. The guarantee stated that it would be subject to New York State law. Id. On the same day, Chlorine Partners issued a Confirmation of Guaranty and a Certificate of Resolution Authorizing Guarantee of Payment. Id.

### The November 2007 Liquid Caustic Soda Shipment

13. On October 17, 2007, Nick Yamada, Manager of the Chlor-Alkali Department of MIC, spoke by telephone with Steve Johnson of Equa-Chlor, regarding a shipment of liquid caustic soda from MIC to Equa-Chlor. Yamada Aff. at ¶ 10.

14. During that October 17, 2007 telephone conversation, MIC and Equa-Chlor agreed on a shipment of approximately 3,000 DMT of liquid caustic soda at a price of $385.00 per DMT. Yamada Aff. at ¶ 11; Ex. 1, ¶ 12. Chlorine Partners admits this agreement. Ex. 2, ¶ 12.

15. On October 18, 2007, Mr. Yamada emailed Mr. Johnson, copying Koji Osuka and Kathy Centeno of MIC and Timothy Root of Equa-Chlor, and confirmed the agreement they reached on October 17, 2007. Yamada Aff. at ¶ 12; Ex. 1, ¶ 12 and Ex. F; Ex. 2, ¶ 12.

16. On or about November 18, 2007, MIC delivered 2,999.154 DMT of liquid caustic soda to Equa-Chlor under the amended ECM Contract, at a total cost of $1,154,674.29. Yamada Aff. at ¶ 13; Ex. 1, ¶ 13. An invoice dated November 26, 2007 confirmed the shipment. Id.; Ex. G to Ex. 1. Chlorine Partners admits the information in this paragraph. Ex. 2, ¶ 13.

<u>Equa-Chlor's Breach</u>

17. On December 18, 2007, Mr. Johnson emailed Mr. Yamada and informed him that Equa-Chlor would be unable to make the payment due that day on the invoice for the November 18, 2007 delivery. Yamada Aff. at ¶ 14; Ex. 1, ¶ 14 and Ex. H. Mr Johnson suggested a payment plan consisting of four equal payments with a 3% finance charge on each payment over a four month period. <u>Id.</u>

18. During December 18-21, 2007, Mr. Yamada spoke by telephone with Mr. Johnson regarding the proposed payment plan. Yamada Aff. at ¶ 15.

19. On December 21, 2007, Mr. Yamada emailed Mr. Johnson and confirmed that Equa-Chlor could pay the invoice in four equal installments, plus a 3% finance charge on each payment, due on January 7, February 4, March 3, and April 7, 2008. Yamada Aff. at ¶ 16; Ex. 1, ¶ 15 and Ex. H.

20. On January 7, 2008, Equa-Chlor made the first payment of $297,328.20 to MIC, which consisted of one quarter of the invoice amount ($288,668.57) plus the 3% finance charge ($8,659.63). Yamada Aff. at ¶ 17; Ex. 1, ¶ 16. Chlorine Partners admits it made a payment of $297,328.20 to MIC on January 7, 2008. Ex. 2, ¶ 16.

21. The January 7, 2008 payment was the only payment made on the invoice to date. Yamada Aff. at ¶ 17; Ex. 1, ¶ 17.

22. At present, $866,005.72 from the invoice remains outstanding, plus $25,980.17 in finance charges. Neither Equa-Chlor nor ECM has made any further payments on the invoice. Yamada Aff. at ¶ 18; Ex. 1, ¶ 18.

<u>Chlorine Partners Fails to Fulfill Guarantees</u>

23. On February 27, 2008, MIC's counsel sent a demand letter to Chlorine Partners, demanding payment of the sums owed to MIC by Equa-Chlor and ECM under Chlorine Partners' guarantees by March 5, 2008. Yamada Aff. at ¶ 19; Ex. 1, ¶ 19 and Ex. I.

24. Chlorine Partners has not paid the amounts owed to MIC under its guarantees. Yamada Aff. at ¶ 20; Ex. 1, ¶ 20.

25. As a result of Chlorine Partners' breach of contract, MIC has suffered damages in the sum of $866,005.72 still owed on the invoice plus $25,980.17 in finance charges for a total of $891,985.89. Yamada Aff. at ¶ 21; Ex. 1, ¶ 21.

Dated:   New York, New York
         July 17, 2008

KORNSTEIN VEISZ WEXLER & POLLARD, LLP

By: Daniel J. Kornstein (DK - 3264)

757 Third Avenue
New York, New York 10017
(212) 418-8600

Attorneys for Plaintiff