UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MITSUBISHI INTERNATIONAL            :
CORPORATION,                                        08 CV 03180(DC)(DF)
                                    :

        Plaintiff,
                                    :    ECF Case

            -against-
                                    :

CHLORINE PARTNERS, LP,
                                    :

        Defendant.
----------------------------------X


PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT


KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600
Attorneys for Plaintiff

Table of Contents

Why Summary Judgment Is Proper . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . 2

THIS PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    SINCE CHLORINE PARTNERS FAILED TO PAY
    THE INVOICE FOR LIQUID CAUSTIC SODA
    DELIVERED BY MIC, IT BREACHED ITS
    GUARANTEES TO MIC . . . . . . . . . . . . . . . . . . 9

    1.   Guarantees Absolute and Unconditional . . . . 9

    2.   Underlying Debt Undisputed . . . . . . . . . 11

    3.   Chlorine Partners, Guarantor,
       Failed to Perform . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

Table of Authorities

Cases                                                                   Page(s)

Celotex Corp. v. Catrett,
        477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . 8

City of New York v. Clarose Cinema Corp.,
        256 A.D.2d 69, 681 N.Y.S.2d 251
        (1st Dep't 1998) . . . . . . . . . . . . . . . . 9, 10, 12

Fujitsu Ltd. v. Fed. Express Corp.,
        247 F.3d 423 (2d Cir. 2001) . . . . . . . . . . . . . . 9

Kensington House Co. v. Oram,
        293 A.D.2d 304, 739 N.Y.S.2d 572
        (1st Dep't 2002) . . . . . . . . . . . . . . . . 9, 10, 12

Scotto v. Almenas,
        143 F.3d 105 (2d Cir. 1998) . . . . . . . . . . . . . . 8

SEC v. Kern,
        425 F.3d 143 (2d Cir. 2005) . . . . . . . . . . . . . . 8

U.S. Sec. & Futures Corp. v. Irvine,
        No. 00 Civ. 2322,
        2003 WL 1907877 (S.D.N.Y. Apr. 16, 2003) . . . . . 9, 10, 12


Statutes and Other Authorities

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 56(e)(2) . . . . . . . . . . . . . . . . . . 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MITSUBISHI INTERNATIONAL        :
CORPORATION,                              08 CV 03180(DC)(DF)

                                :
        Plaintiff,

                                :    ECF Case

        -against-
                                :

CHLORINE PARTNERS, LP,
                                :
        Defendant.
----------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN
### SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This diversity action presents a straightforward enforcement of written guarantees.  Defendant Chlorine Partners, LP ("Chlorine Partners") has simply failed to adhere to its written guarantees to plaintiff Mitsubishi International Corporation ("MIC").  As a result, Chlorine Partners owes MIC $891,985.89.

### Why Summary Judgment Is Proper

The clear, undisputed evidence shows that Chlorine Partners issued two guarantees, covering any obligation to MIC from its subsidiaries Equa-Chlor, LLC ("Equa-Chlor") and Equa-Chlor Marketing, LLC ("ECM").  Those guarantees were absolute and unconditional.  Chlorine Partners has refused to honor the guarantees, leaving MIC holding the tab.

In April 2006, MIC and ECM signed a contract in which ECM agreed to buy liquid caustic soda from MIC.  Soon after the

contract was signed, Chlorine Partners issued a written guarantee of payment to MIC of any obligation of ECM.  In July 2007, ECM assigned the contract to Equa-Chlor, and Chlorine Partners issued a written guarantee covering the obligations of Equa-Chlor to MIC at the same time.

In the fall of 2007, MIC and Equa-Chlor agreed on a shipment of liquid caustic soda to Equa-Chlor, which was delivered by MIC to Equa-Chlor in November 2007.  Equa-Chlor informed MIC that it could not make the payment on the due date in December.  MIC and Equa-Chlor agreed that Equa-Chlor could pay the invoice in four installments with a 3% finance charge.  Equa-Chlor made the first payment, but has failed to make any further payments.  Under the guarantees, Chlorine Partners was responsible for the remaining obligation to MIC.  Chlorine Partners has not paid the balance on the invoice, and has offered no reason for its failure to do so.

In these circumstances, the Court should grant MIC's motion for summary judgment.

## STATEMENT OF FACTS

The facts relevant to this motion are undisputed and drawn primarily from unambiguous contracts and guarantees and correspondence between the parties.

### The Parties

Federal jurisdiction is based on diversity of citizenship.  MIC, a New York corporation, engages in the business of

2

international trade of products -- including liquid caustic soda
-- and services across a range of industry sectors.  Affidavit of
Nobuhiko Yamada dated July 16, 2008 ("Yamada Aff.") at ¶ 3; Ex.
1, ¶ 3.  (Cites to "Ex." are to the exhibits annexed to the
Yamada Aff.)  Defendant Chlorine Partners, a Texas limited
liability company with its principal place of business in
Washington State, produced chlorine and caustic soda during the
relevant time period.  Ex. 2, ¶ 4.  Chlorine Partners is the 100%
owner of Equa-Chlor and ECM.  Id.

The Contract and Amendment

On March 26, 2006, MIC and ECM signed a contract in which
ECM agreed to purchase membrane grade liquid caustic soda in bulk
from MIC during the period April 1, 2006 through March 31, 2007
(the "ECM Contract").  Yamada Aff. at ¶ 4; Ex. 1, ¶ 5 and Ex. A.
The contract provided for automatic renewal unless terminated by
either party in writing 90 days prior to the end date of the
current contract term.  Id.

On April 17, 2007, MIC and ECM signed a written amendment to
the ECM contract, changing the term to January 1, 2007 through
December 31, 2007.  Yamada Aff. at ¶ 5; Ex. 1, ¶ 6 and Ex. B.
Under the terms of the ECM Contract, as amended, ECM agreed to
purchase 16,000-32,000 dry metric tons ("DMT") of liquid caustic
soda from MIC per contract year at mutual option and agreed that
the price of liquid caustic soda would be set by a mutually

3

agreed-upon calculation.   Yamada Aff. at ¶ 6; Ex. 1, ¶¶ 7-8 and

Exs. A and B.

On July 2, 2007, ECM assigned the ECM Contract to Equa-

Chlor.   Yamada Aff. at ¶ 7; Ex. 1, ¶ 10 and Ex. D.   Chlorine

Partners admits that ECM assigned the ECM Contract to Equa-Chlor.

Ex. 2, ¶ 10.

The Guarantees

On April 12, 2006, Chlorine Partners signed a written

Guarantee of Payment in which Chlorine Partners unconditionally

guaranteed to MIC payment of any present or future indebtedness

for goods and merchandise sold or advanced by MIC to ECM.   Yamada

Aff. at ¶ 8; Ex. 1, ¶ 9 and Ex. C.   On the same day, Chlorine

Partners issued a Certificate of Resolution Authorizing Guarantee

of Payment.   Id.

On July 2, 2007, simultaneous with the assignment of the ECM

Contract from ECM to Equa-Chlor, Chlorine Partners signed a

written Guarantee of Payment in which Chlorine Partners

unconditionally guaranteed to MIC payment of any present or

future indebtedness for goods and merchandise sold or advanced by

MIC to Equa-Chlor.   Yamada Aff. at ¶ 9; Ex. 1, ¶ 11 and Ex. E.

On the same day, Chlorine Partners issued a Confirmation of

Guaranty and a Certificate of Resolution Authorizing Guarantee of

Payment.   Id.

Both guarantees state that they "unconditionally guarantee"

4

payment to MIC of "any and all accounts and indebtedness now due or to become due for or on account of goods and merchandise sold or advanced . . . by [MIC]." Exs. C and E to Ex. 1. The guarantees also state:

> This is to be a continuing guarantee, and the extension of the time of payment or the acceptance of any sum or sums of account, or the acceptance of notes, drafts or any security from ECM shall in no way weaken or impair the validity of this guarantee. The principal contract may be modified or dealt with in any way without notice to the undersigned and without in any way impairing or affecting the liability and obligation under this guarantee for any remaining unpaid in cash to our company or its successors and assigns.

Id. The guarantees further provide that MIC has the right to proceed against Chlorine Partners "at any time," without first providing notice, demand, or proceeding against ECM or Equa-Chlor.

Both guarantees stated that they would be subject to New York State law. Yamada Aff. at ¶¶ 8-9; Exs. C and E to Ex. 1.

The November 2007 Liquid Caustic Soda Shipment

On October 17, 2007, Nick Yamada, Manager of the Chlor-Alkali Department of MIC, spoke by telephone with Steve Johnson of Equa-Chlor, regarding a shipment of liquid caustic soda from MIC to Equa-Chlor. Yamada Aff. at ¶ 10. During that call, MIC and Equa-Chlor agreed on a shipment of approximately 3,000 DMT of

5

liquid caustic soda at a price of $385.00 per DMT.  Yamada Aff.
at ¶ 11; Ex. 1, ¶ 12.  Chlorine Partners admits this agreement.
Ex. 2, ¶ 12.  On October 18, 2007, Mr. Yamada emailed Mr. Johnson
and confirmed the agreement they reached on October 17, 2007.
Yamada Aff. at ¶ 12; Ex. 1, ¶ 12 and Ex. F; Ex. 2, ¶ 12.

On or about November 18, 2007, MIC delivered 2,999.154 DMT
of liquid caustic soda to Equa-Chlor under the amended ECM
Contract, at a total cost of $1,154,674.29.  Yamada Aff. at ¶ 13;
Ex. 1, ¶ 13.  An invoice dated November 26, 2007 confirmed the
shipment.  Id.; Ex. G to Ex. 1.  In its answer Chlorine Partners
admits the information in this paragraph.  Ex. 2, ¶ 13.

Equa-Chlor's Breach

On December 18, 2007, Mr. Johnson emailed Mr. Yamada and
informed him that Equa-Chlor would be unable to make the payment
due that day on the invoice for the November 18, 2007 delivery.
Yamada Aff. at ¶ 14; Ex. 1, ¶ 14 and Ex. H.  Mr Johnson suggested
a payment plan consisting of four equal payments with a 3%
finance charge on each payment over a four month period.  Id.
During December 18-21, 2007, Mr. Yamada spoke by telephone with
Mr. Johnson regarding the proposed payment plan.  Yamada Aff. at
¶ 15.

On December 21, 2007, Mr. Yamada emailed Mr. Johnson and
confirmed that Equa-Chlor could pay the invoice in four equal
installments, plus a 3% finance charge on each payment, due on

6

January 7, February 4, March 3, and April 7, 2008.  Yamada Aff.
at ¶ 16; Ex. 1, ¶ 15 and Ex. H.

On January 7, 2008, Equa-Chlor made the first payment of
$297,328.20 to MIC, which consisted of one quarter of the invoice
amount ($288,668.57) plus the 3% finance charge ($8,659.63).
Yamada Aff. at ¶ 17; Ex. 1, ¶ 16.  Chlorine Partners admits it
made a payment of $297,328.20 to MIC on January 7, 2008.  Ex. 2,
¶ 16.  The January 7, 2008 payment was the only payment made on
the invoice to date.  Yamada Aff. at ¶ 17; Ex. 1, ¶ 17.

<u>Chlorine Partners Fails to Fulfill Guarantees</u>

At present, $866,005.72 from the invoice remains
outstanding, plus $25,980.17 in finance charges.  Yamada Aff. at
¶ 18; Ex. 1, ¶ 18.  On February 27, 2008, MIC's counsel sent a
demand letter to Chlorine Partners, demanding payment of the sums
owed to MIC by Equa-Chlor and ECM under Chlorine Partners'
guarantees by March 5, 2008.  Yamada Aff. at ¶ 19; Ex. 1, ¶ 19
and Ex. I.  Chlorine Partners has not paid the amounts owed to
MIC under its guarantees.  Yamada Aff. at ¶ 20; Ex. 1, ¶ 20.
Chlorine Partners thus owes a total of $891,985.89 to MIC.
Yamada Aff. at ¶ 21; Ex. 1, ¶ 21.

THIS PROCEEDING

On March 31, 2008, MIC commenced this action to recover the
amount remaining due on the invoice plus finance charges as a

7

result of Chlorine Partners' failure to pay off the invoice pursuant to a written guaranty. The complaint asserts one claim for breach of contract. Ex. 1. Chlorine Partners answered the complaint on May 15, 2008. Ex. 2. MIC now moves for summary judgment.

These undisputed facts require judgment in plaintiff's favor.

### SUMMARY JUDGMENT STANDARD

The criteria for summary judgment are familiar. Fed. R. Civ. P. 56(c) permits summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SEC v. Kern, 425 F.3d 143, 147 (2d Cir. 2005).

A properly supported motion for summary judgment cannot be defeated by "mere[] allegations or denials" of a pleading; rather, it must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-movant cannot rely on "conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Instead, it "must produce specific facts indicating that a genuine factual issue exists," and "there must be evidence on which the jury could reasonably find for the non-movant." Id. (quotations

omitted).  <u>See also</u> <u>Fujitsu Ltd. v. Fed. Express Corp.</u>, 247 F.3d
423, 428 (2d Cir. 2001).

Plaintiff's motion meets these criteria.

ARGUMENT

SINCE CHLORINE PARTNERS FAILED TO PAY<br>THE INVOICE FOR LIQUID CAUSTIC SODA<br><u>DELIVERED BY MIC, IT BREACHED ITS GUARANTEES TO MIC</u>

Under New York law, which controls here, to enforce a
written guaranty on a motion for summary judgment, the creditor
simply needs to prove: (1) "an absolute and unconditional
guaranty"; (2) "the underlying debt"; and (3) "the guarantor's
failure to perform under the guaranty." <u>City of New York v.</u>
<u>Clarose Cinema Corp.</u>, 256 A.D.2d 69, 71, 681 N.Y.S.2d 251, 253
(1st Dep't 1998); <u>see also</u> <u>U.S. Sec. & Futures Corp. v. Irvine</u>,
No. 00 Civ. 2322, 2003 WL 1907877 (S.D.N.Y. Apr. 16, 2003);
<u>Kensington House Co. v. Oram</u>, 293 A.D.2d 304, 739 N.Y.S.2d 572
(1st Dep't 2002).  Plaintiff meets all three requirements.

### 1.   Guarantees Absolute and Unconditional

There are two guarantees by Chlorine Partners: one dated
April 12, 2006 guaranteeing payment of ECM's obligations to MIC,
and another dated July 2, 2007 guaranteeing payment of Equa-
Chlor's obligations to MIC.  The wording of the two guarantees is
almost identical.  The guarantees both state that they
"unconditionally guarantee" payment to MIC of "any and all

9

accounts and indebtedness now due or to become due for or on account of goods and merchandise sold or advanced . . . by [MIC]." Exs. C and E to Ex. 1. The guarantees also state:

> This is to be a continuing guarantee, and the extension of the time of payment or the acceptance of any sum or sums of account, or the acceptance of notes, drafts or any security from ECM shall in no way weaken or impair the validity of this guarantee. The principal contract may be modified or dealt with in any way without notice to the undersigned and without in any way impairing or affecting the liability and obligation under this guarantee for any remaining unpaid in cash to our company or its successors and assigns.

Id. The guarantees further provide that MIC has the right to proceed against Chlorine Partners "at any time," without first providing notice, demand, or proceeding against ECM or Equa-Chlor. Id. Both guarantees are thus unconditional and absolute. See City of New York v. Clarose Cinema Corp., 256 A.D.2d at 70, 681 N.Y.S.2d at 252 (guaranty was "'absolute, unconditional, present and continuing'" and creditor "retained the right to proceed first against the guarantor without the need to exhaust other available remedies"); U.S. Sec. & Futures Corp. v. Irvine, No. 00 Civ. 2322, 2003 WL 1907877, at *4 (guaranty "absolutely and unconditionally guaranteed the debt"); Kensington House Co. v. Oram, 293 A.D.2d 304, 739 N.Y.S.2d 572.

10

2.    Underlying Debt Undisputed

On or around November 18, 2007, MIC delivered 2,999.154 DMT of liquid caustic soda to Equa-Chlor. Equa-Chlor made one installment payment on the invoice, but failed to pay the remaining balance plus finance charges, rendering the balance of the debt unpaid.

The delivery was pursuant to a contract between MIC and ECM, which ECM had assigned to Equa-Chlor. The contract provided that ECM (and Equa-Chlor, after the assignment) would buy liquid caustic soda from MIC at mutual option with a mutually agreed price. Before the November 2007 delivery, MIC and Equa-Chlor agreed that MIC would ship approximately 3,000 DMT of liquid caustic soda to Equa-Chlor at a price of $385.00 per DMT. An invoice confirmed the actual shipment, at a total cost of $$1,154,674.29.

On the day payment for the shipment was due, Equa-Chlor contacted MIC and stated that Equa-Chlor would be unable to make the payment. Equa-Chlor suggested a payment plan. MIC agreed that Equa-Chlor could pay off the invoice by making four equal monthly payments, plus a 3% finance charge, beginning in January 2008. Equa-Chlor made the first installment payment on January 7, 2008, but has failed to make any further payments on the invoice, leaving $866,005.72 from the invoice unpaid, plus $25,980.17 in finance charges. The total debt of $891,985.89 is

11

therefore undisputed.  See <u>City of New York v. Clarose Cinema</u>
<u>Corp.</u>, 256 A.D.2d 69, 681 N.Y.S.2d 251; <u>U.S. Sec. & Futures Corp.</u>
<u>v. Irvine</u>, No. 00 Civ. 2322, 2003 WL 1907877, at *4 (finding that
"joint and several liability . . . has been established");
<u>Kensington House Co. v. Oram</u>, 293 A.D.2d 304, 739 N.Y.S.2d 572.

### 3.    <u>Chlorine Partners, Guarantor, Failed to Perform</u>

Approximately one month after Equa-Chlor failed to make the
second installment payment on the invoice, MIC's counsel sent a
demand letter to Chlorine Partners.  Although the guarantees did
not require a demand letter, MIC's counsel nonetheless demanded
payment of the balance due on the invoice.  The demand was made
pursuant to Chlorine Partners' guarantees of ECM and Equa-Chlor.
Chlorine Partners has made no payment to MIC, and continues to be
in breach of the guarantees.  Chlorine Partners has thus failed
to perform under the guarantees.  See <u>City of New York v. Clarose</u>
<u>Cinema Corp.</u>, 256 A.D.2d 69, 681 N.Y.S.2d 251; <u>U.S. Sec. &</u>
<u>Futures Corp. v. Irvine</u>, No. 00 Civ. 2322, 2003 WL 1907877, at *4
(finding that defendant "has failed to perform under the
guarantee"); <u>Kensington House Co. v. Oram</u>, 293 A.D.2d 304, 739
N.Y.S.2d 572.

12

CONCLUSION

The undisputed evidence shows that Chlorine Partners breached its guarantees to MIC by failing to pay the balance of the invoice for the November 2007 shipment of liquid caustic soda. The guarantees are absolute and unconditional; the debt remains unpaid; and Chlorine Partners failed to fulfill its obligations under the guarantees.

For the reasons given, plaintiff's motion for summary judgment should be granted.

Dated:    New York, New York
          July 17, 2008

Respectfully submitted,

KORNSTEIN VEISZ WEXLER & POLLARD, LLP

By: Daniel J. Kornstein (DK - 3264)

757 Third Avenue
New York, New York 10017
(212) 418-8600

Attorneys for Plaintiff

Of Counsel:

    Catherine M. Irwin

13